**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VESKO ANANIEV, | |
| Plaintiff, | |
| v. | Civil Action No. 13-00341 (BAH) |
| | Judge Beryl A. Howell |
| STEVEN FREITAS, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Vesko Ananiev, who is proceeding *pro se*, brings this lawsuit against ten unidentified "Doe" defendants and ten named defendants—the Sonoma County Sheriff's Department, as well as Sheriff Steven Freitas and Sheriff's Deputy Kathryn Straley, in both their personal and official capacities (collectively the "Law Enforcement Defendants"); Wells Fargo Bank N.A. ("Wells Fargo"), Aurora Loan Services LLC ("ALS"), and Aurora Bank, FSB ("Aurora Bank") (the "Bank Defendants"); and Rosenthal Withem & Zeff, Michael D. Zeff, Michael L. Withem, and Robert L. Rosenthal (the "Law Firm Defendants")—in connection with the foreclosure of his California home. *See generally* First Amended Compl. ("FAC"), ECF No. 9. The plaintiff seeks a declaratory judgment with respect to the title of his property and assorted damages on the grounds that actions against the property violated his constitutional, statutory, and common law rights, as well as a consent decree entered against multiple financial entities, including Wells Fargo, in an unrelated matter before this court. *See id.* ¶¶ 88–171. The plaintiff also alleges violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*., and purports to be a relator bringing a *qui tam* civil action on behalf of the United States government. *See id.* ¶¶ 132–63.

1

For the reasons explained below, the Court dismisses this action, *sua sponte*, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim on which relief may be granted, as well as under the doctrine of claim preclusion.

## I.     BACKGROUND

The facts surrounding the plaintiff's mortgage, foreclosure, and prior lawsuits are set forth in detail in this Court's previous decision involving this plaintiff.  *See Ananiev v. Wells Fargo Bank, NA* (*Ananiev III*) No. 12-1804, 2013 U.S. Dist. LEXIS 130208, at *4–6 (D.D.C. Sept. 12, 2013).  The plaintiff has largely regurgitated the allegations made in his previous complaint filed with this Court, which was dismissed.  *See id.*  Nevertheless, a brief summary of those facts is helpful in explaining the context for the instant decision.

### A.  The Plaintiff's Mortgage & Prior Lawsuits

The string of events leading up to the instant suit began with the plaintiff obtaining a mortgage in 2004.  After defaulting on that mortgage, the plaintiff was involved in at least three federal lawsuits pertaining to his property, with this action being the fourth.  The plaintiff was also named as a defendant in a state court action in California.  The following provides a brief overview of these events.

#### 1. The Plaintiff's Mortgage

In June 2004, the plaintiff obtained a mortgage in the amount of $511,200 that was secured by a deed of trust on real property at 1243 and 1247 Kodiak Court, Santa Rosa, California (the "California Property").  *See* FAC, Ex. C (Certified Securitization Analysis) at 3, ECF No. 9-1.  Through subsequent transactions that occurred without the involvement of the plaintiff, ownership of the mortgage was transferred to Wells Fargo, and ALS became the

servicing agent.  *Id.* at 4.  Aurora Bank acquired title to the California Property in May 2012 at a trustee's sale following foreclosure proceedings and sought to evict the plaintiff.  FAC, Ex. F (Aurora Bank Complaint for Unlawful Detainer filed on June 22, 2012, in Superior Court of California, County of Sonoma) at 1, ECF No. 9-1 ("Unlawful Detainer Compl.").

## 2. The Plaintiff's Prior Lawsuits

On May 7, 2012, the plaintiff filed a complaint in the U.S. District Court for the Northern District of California against multiple defendants, including Aurora Bank, ALS, and the Law Firm Defendants, for the allegedly fraudulent servicing of his loan and fraudulent foreclosure on his property.  *Ananiev v. Aurora Loan Servs.*, *LLC* (*Ananiev I*), No. C. 12-2275-SI, 2012 U.S. Dist. LEXIS 95441, at *3–4 (N.D. Cal. July 10, 2012).  The court granted the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and granted the plaintiff limited leave to amend.  *Id.* at *22.  The plaintiff's effort to amend his complaint against those defendants was unavailing, and the court granted those defendants' renewed motions to dismiss the amended complaint.  *Ananiev v. Aurora Loan Servs.*, *LLC* (*Ananiev II*), No. C. 12-2275 SI, 2012 U.S. Dist. LEXIS 132489, at *12 (N.D. Cal. Sept. 17, 2012).  The plaintiff took an appeal from the Order in *Ananiev II*, which remains pending in the U.S. Court of Appeals for the Ninth Circuit.  *See Ananiev v. Aurora Loan Services, LLC*, No. 12-17108 (9th Cir. filed Sept. 19, 2012).

While the plaintiff's lawsuit that gave rise to *Ananiev I* and *II* was pending, defendant Aurora Bank, on June 22, 2012, filed an unlawful detainer action against the plaintiff in the Superior Court of the State of California, County of Sonoma ("Superior Court"), seeking possession of the California Property.  *See generally* Unlawful Detainer Compl.; *see also* FAC, ¶¶ 8–11.  Defendant Michael D. Zeff, an attorney with the defendant law firm of Rosenthal,

Withem & Zeff, represented Aurora Bank in its unlawful detainer action. *See* Unlawful Detainer Compl. at 3. In that complaint, Aurora Bank claimed it had acquired title to the California Property at a trustee's sale and was entitled to possession of the property. *See id.* at 2. The Superior Court found in favor of Aurora Bank and issued a writ of possession. FAC ¶ 9; *see Ananiev III*, 2013 U.S. Dist. LEXIS 130208, at *6.

The plaintiff then brought suit in this Court against eight named and ten unidentified "Doe" defendants allegedly involved in the foreclosure. *Ananiev III*, 2013 U.S. Dist. LEXIS 130208, at *1–2. He claimed the defendants had violated his due process rights, intentionally inflicted emotional distress on him, and violated a consent judgment[1] entered against multiple financial entities, a claim the plaintiff reiterates in the instant case. *Id.* Upon motions to dismiss by seven of the named defendants, the Court dismissed the complaint in *Ananiev III* for improper venue and found that transfer in lieu of dismissal was not in the interest of justice. *Id.* at *2–3.

### B. Plaintiff's Instant Complaint (*Ananiev IV*)

On March 14, 2013, the plaintiff filed the original complaint in the instant matter setting out factual allegations nearly identical to those in his prior suits. *See* Compl., ECF No. 1. After more than 120 days had passed without a proof of service filed under Federal Rule of Civil Procedure 4(m), this Court issued an order to show cause why the complaint should not be dismissed for failure to prosecute. ECF No. 5. In response, the plaintiff filed a purported proof of service on the Law Enforcement Defendants on August 16, 2013. ECF No. 6. No defendant filed an answer, however, prompting the Court to issue a second order to show cause why the complaint should not be dismissed for failure to prosecute. ECF No. 7. The plaintiff filed the FAC on December 23, 2013. *See* FAC.

---

[1] The plaintiff refers in the FAC to a consent judgment entered into by five banks, including Wells Fargo, in this court. *See* Consent Judgment, *United States v. Bank of Am. Corp.*, No. 12-CV-361 (D.D.C. Apr. 4, 2012), ECF No. 11 ("Unrelated Consent Judgment").

In his eighty-five page FAC, accompanied by an additional ninety-eight pages of exhibits, the plaintiff makes rambling and meandering factual allegations. *See generally* FAC. As noted, the FAC largely recites the allegations already dismissed in *Ananiev II*, 2012 U.S. Dist. LEXIS 132489, at *12, and *Ananiev III*, 2013 U.S. Dist. LEXIS 130208, at *6. The FAC differs from the plaintiff's earlier complaints in that it adds the Law Enforcement Defendants, omits the Superior Court as a defendant, and pleads several additional causes of action. *See* FAC ¶ 1.

The crux of the plaintiff's claims is that the defendants, by their participation in the allegedly unlawful assignment of deed of trust, substitution of trustee, foreclosure of the California Property, and the eviction of the plaintiff from that property, violated his constitutional, statutory, and common law rights, as well as the consent decree Wells Fargo entered into, along with four other major banks, in this Court, namely, the Consent Judgment in *United States v. Bank of Am. Corp.*, No. 12-CV-361 (D.D.C. Apr. 4, 2012), ECF No. 11 ("Unrelated Consent Judgment"). *See generally* FAC.

The plaintiff asserts eight separately captioned claims ("COA"): (1) seeking compensatory damages "under common law," FAC ¶¶ 88–111, which the Court construes as claiming common law fraud, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a *et seq.*, or violation of the Unrelated Consent Judgment ("First COA"); (2) violation of the plaintiff's due process rights and intentional infliction of emotional distress ("IIED") through the defendants' involvement with the foreclosure of the California Property ("Second COA"), *id.* ¶¶ 112–31; (3) seeking cancellation of the Substitution of Trustee, Assignment of Deed of Trust, Notice of Default, and Notice of Trustee Sale as fraudulent documents ("Third COA"), *id.* ¶ 130; (4) violations of the FCA, 31 U.S.C. §§ 3729 *et seq.*, pleaded as a relator bringing a *qui tam* civil action on behalf of the United States government

("Fourth, Fifth, Sixth, and Seventh COAs"), *id.* ¶¶ 132–63; and (5) alleging that the Law

Enforcement Defendants violated plaintiff's Fourth Amendment right to be free from unlawful

search and seizure through their seizure of the California property ("Eighth COA"), *id.* ¶¶ 164–

71.

## II.     LEGAL STANDARD

### A.  Failure to State a Claim Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).  A motion under Rule

12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather it tests whether a

plaintiff properly has stated a claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Although detailed factual allegations are not required to withstand a Rule 12(b)(6) motion, a

complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment]

to relief."  *Twombly*, 550 U.S. at 555 (alteration in original).  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Aschcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (alteration in original).  The Supreme

Court stated "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*,

550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

*Pro se* plaintiffs and their pleadings are "[held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006); *United States v. Palmer*, 296 F.3d 1135, 1143 (D.C. Cir. 2002); *Rogler v. U.S. Dep't of Health and Human Servs.*, 620 F. Supp. 2d 123, 127 (D.D.C. 2009). Nevertheless, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### B. Claim Preclusion

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In contrast, issue preclusion, which was "once known as 'collateral estoppel' and 'direct estoppel,'" bars "successive litigation of an issue of facts or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* at 892 n.5 (internal quotations and citations omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (internal quotation marks and citation omitted). The Supreme Court has explained that these preclusion doctrines serve the important functions to "protect against 'the expense and vexation attending multiple lawsuits,

conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)) (alteration in original); *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("The objective of the doctrine of issue preclusion . . . is judicial finality; it fulfills 'the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.'") (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)).

Under "claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (citations omitted). The doctrine of claim preclusion helps advance the "conclusive resolution of disputes" and "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate[,] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. at 153–54 (citations omitted). Furthermore, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Even if a decision is wrongly decided, the preclusive effects apply. *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013) ("A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to [claim preclusion] effect.").

### C.  Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

The court must consider a lack of subject matter jurisdiction *sua sponte*.  "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  FED. R. CIV. P. 12(h)(3); *see Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).  "A dispute does not fall within the subject-matter jurisdiction of federal courts unless it qualifies as a 'case' or 'controversy' within the meaning of article III, and it cannot so qualify unless the plaintiff has suffered 'injury in fact.'"  *Nat'l Ass'n of Recycling Indus., Inc. v. Sec'y of Commerce*, 494 F. Supp. 158, 160 (D.D.C. 1980) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 218–19 (1974); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 151 (1970)).  A plaintiff must allege an injury of "sufficient immediacy and reality to form a live case or controversy," or the plaintiff lacks standing to pursue the claim and the court lacks the subject matter jurisdiction to consider it.  *Cruz v. Am. Airlines*, 150 F. Supp. 2d 103, 118–19 (D.D.C. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983)).

### III.  DISCUSSION

In the D.C. Circuit, "[t]he district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint."  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012) (citing *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990)); *see also Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) ("Complaints may . . . be dismissed . . . *sua sponte* . . . under Rule 12(b)(6) whenever the plaintiff cannot possibly win

relief.") (internal quotation marks omitted).  A district court may also dismiss a claim *sua sponte* under the doctrine of claim preclusion due to the doctrine's jurisdictional character.  *SBC Commc'ns, Inc. v. FCC*, 407 F.3d 1223, 1230 (D.C. Cir. 2005) ("a party's forfeiture of the right to assert [res judicata] . . . does not destroy a court's ability to consider the issue *sua sponte*") (quoting *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997)).

In each of his eight causes of action plaintiff has failed to plead sufficient facts to allege a possibility of relief; failed to show that the Court has subject matter jurisdiction over the claim; or has pleaded a claim that was dismissed against the same or significantly related parties in earlier suits and should have been brought in those suits.  Consequently, all of his claims fail and the matter must be dismissed.  The Court addresses each ground for dismissal below.

## A.  Plaintiff Fails to State A Claim Upon Which Relief May be Granted

The plaintiff's First COA fails to state a claim upon which relief may be granted to the extent that it alleges a violation of the Unrelated Consent Judgment, because non-parties may not enforce the judgment.  The plaintiff's FCA claims (the Fourth, Fifth, Sixth, and Seventh COAs) fail to state a claim upon which relief may be granted because the plaintiff has failed to plead essential elements of an FCA claim and because FCA relators may not proceed *pro se*.  The Court therefore dismisses the plaintiff's First, Fourth, Fifth, Sixth, and Seventh COAs pursuant Rule 12(b)(6).

### 1. Unrelated Consent Judgment

The plaintiff's First COA seeks compensatory damages "under common law," though the precise nature of this cause of action is unclear.  *See* FAC ¶¶ 88–111.  The plaintiff restates many of his factual allegations and refers to numerous sources of law, but does not clearly elucidate a specific claim under any of those sources.  Based on the allegations set forth, the Court construes

the First COA as claiming common law fraud, violation of the FDCPA, violation of the Unrelated Consent Judgment, or some combination thereof. To the extent that the First COA does allege a violation of FDCPA or common law fraud, such claims are barred under the doctrine of claim preclusion because the prior lawsuit in the Northern District of California satisfied all of the four factors necessary for claim preclusion, as this Court found in *Ananiev III,* 2013 U.S. Dist. LEXIS 130208, at *18–19. *See Porter*, 606 F.3d at 813; *see also infra* Part III.B.

To the extent that the plaintiff pleads a claim for violation of the Unrelated Consent Judgment, the facts alleged fail to state a claim upon which relief may be granted. The plaintiff's First COA describes various actions undertaken by the defendants that the plaintiff alleges violate the Unrelated Consent Judgment. FAC ¶ 88. The plaintiff is not a party to the Unrelated Consent Judgment and therefore is unable to enforce any obligation imposed upon the parties to the judgment. *See* Unrelated Consent Judgment at ¶¶ 6–8; Ex. E ("Enforcement terms") at E-14– 15, ECF No. 11. "The Unrelated Consent Judgment . . . simply does not create a private right of action allowing third parties, such as the plaintiff, to bring claims for alleged violations of the Judgments, let alone unrelated claims." *McCain v. Bank of Am.,* No. 13-1418, 2014 U.S. Dist. 11499, at *20 (D.D.C. Jan. 30, 2014) (citing *Ananiev III*, 2013 U.S. Dist. LEXIS 130208, at *15) (discussing the Unrelated Consent Judgment); *accord Rafferty v. NYNEX Corp.*, 60 F.3d 844, 849 (D.C. Cir. 1995) ("Unless a government consent [judgment] stipulates that it may be enforced by a third party beneficiary, only the parties to the judgment can seek enforcement of it."); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993) ("Only the Government can seek enforcement of its consent [judgments] . . . therefore, even if the Government intended its consent [judgment] to benefit a third party, that party could not enforce it unless the [judgment] so provided.").

Consequently, the plaintiff's First COA is dismissed for failure to state a claim upon which relief may be granted.

## 2. False Claims Act COAs

The plaintiff's Fourth, Fifth, Sixth, and Seventh COAs, unlike most of the claims in the First COA, were not presented in *Ananiev III*, but their novelty does not save them here. The plaintiff alleges that all of the defendants violated 31 U.S.C. § 3729(a)(1)(A), which establishes liability for one who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States or one of its employees or contractors. FAC ¶¶ 132–39; *see* 31 U.S.C. § 3729(a)(1)(A), (b)(2). The plaintiff further alleges that the Bank Defendants violated 31 U.S.C. §§ 3729(a)(1)(B), (a)(1)(C), (a)(1)(D), and (a)(1)(G).[2] FAC ¶¶ 140–63. These claims fail for at least three reasons.

First, the complaint is devoid of the factual elements necessary to state a claim under the FCA. "A proper False Claims Act claim has three elements: (1) the defendant presented a claim for payment or approval to the government, (2) the claim was 'false or fraudulent,' and (3) the defendant acted knowing that the claim was false." *U.S. ex rel. Folliard v. Govplace*, 930 F. Supp. 2d 123, 127 (D.D.C. 2013) (internal citations omitted). The plaintiff does not address any of these elements and nothing in the complaint can be construed as satisfying them.

---

[2] These subsections establish liability for any person who: "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G); (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property; (E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true; … or (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(B)–(G).

Second, and critically for the plaintiff's FCA claims, a relator in a *qui tam* action may not proceed *pro se*. *See U.S. ex rel. Fisher v. Network Software Assocs.*, 377 F. Supp. 2d 195, 196 (D.D.C. 2005); *Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 12 (D.D.C. 2003) (holding that "[t]he need for adequate legal representation on behalf of the United States is obviously essential"). As the plaintiff makes clear, he is proceeding *ex relatione* seeking "to recover, on behalf of the United States of America, damages and civil penalties arising from the sale by Defendants of [mortgage-backed securities] and other forms of asset-backed securities, using funds provided by the [U.S.] government." FAC ¶ 17. The plaintiff's FCA claims therefore fail to state a claim upon which relief may be granted because he is impermissibly attempting to proceed *ex relatione* without counsel.

Finally, in the Fifth and Sixth COAs, plaintiff appears to root his FCA claims at least in part on an injury to the United States government in the form of lost income tax revenue. *Id.* ¶¶ 146, 147, 155 ("The Assignment of Deed of Trust executed and recorded in this matter is a false claim of title to the note and deed of trust for the Relator's loan, and resulted in the loss of income tax revenue to the [United States].") The FCA specifically excludes such claims from its purview in providing that it does not apply to "claims, records, or statements made under the Internal Revenue Code of 1986." 31 U.S.C. § 3729(d). For each of the foregoing reasons, plaintiff's Fourth, Fifth, Sixth, and Seventh COAs fail to state a claim upon which relief could be granted.

**B. Plaintiff's Causes of Action Are Barred By The Res Judicata Doctrine**

The plaintiff's First (common law fraud, FDCPA, and Unrelated Consent Judgment), Second (due process and IIED), Third (rescission and §§ 1983 *et seq*. claims), and Eighth (Fourth Amendment) COAs are barred under the doctrine of claim preclusion, as are the Fifth

and Sixth COAs to the extent that those claims are tethered to the plaintiff's mortgage and the subsequent foreclosure. Both this Court and the U.S. District Court for the Northern District of California have already considered and dismissed the plaintiff's virtually identical claims brought against the same or similar defendants. *See Ananiev III*, 2013 U.S. Dist. LEXIS 130208, at \*16–24; *Ananiev II*, 2012 U.S. Dist LEXIS 132489, at \*9–12 (dismissing the plaintiff's allegations against Aurora Bank and the Law Firm Defendants with prejudice); *Ananiev I*, 2012 U.S. Dist. LEXIS 95441, at \*8 (directing the plaintiff not to predicate his wrongful foreclosure claims on "meritless theories"). As noted *supra*, under claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter*, 606 F.3d at 813.

A review of the plaintiff's prior lawsuits shows that all four of these factors have been satisfied with regard to nearly every one of the plaintiff's claims. As to the plaintiff's First and Second COA, the court in the Northern District of California considered and dismissed with prejudice the plaintiff's claims under the FDCPA, 15 U.S.C. §§ 1692a, *et seq.*; the action to quiet title; the Truth in Lending Act claims, 15 U.S.C. § 1641(f), (g); as well as claims for slander of title, wrongful foreclosure, and fraudulent inducement. *See Ananiev I*, 2012 U.S. Dist. LEXIS 95441, at \*8 (dismissing all claims for failure to state a claim upon which relief may be granted with limited leave to amend); *Ananiev II*, 2012 U.S. Dist. LEXIS 132489, at \*9–12 (dismissing plaintiff's amended complaint without leave to amend). This Court considered that prior litigation in *Ananiev III* and held that the plaintiff's claims—for injunctive relief from the defendants' alleged violation of the Unrelated Consent Judgment, for intentional infliction of emotional distress, and for violation of his due process rights—were barred on res judicata

grounds. 2013 U.S. Dist. LEXIS 130208, at *6. The holding in *Ananiev III* may similarly be given res judicata effect in this action, and therefore the same claims that were raised against the same defendants in that case are barred.

To the extent that the plaintiff has, in the instant case, pleaded additional claims[3] and added additional defendants[4] beyond what was pleaded in his three prior federal court actions, those claims are also barred under the doctrine of claim preclusion. A "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action." *Drake*, 291 F.3d at 66 (quoting *Allen v. McCurry*, 449 U.S. at 94) (emphasis in original).

The claim preclusion requirement that the action involve the "same claims or cause of action" as the prior litigation "is satisfied when there is an identity of the causes of action [and] the cases are based on the same nucleus of facts." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer*, 800 F. Supp. 2d 182, 190 (D.D.C. 2011) (quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (en banc)). "Claim preclusion extinguishes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *McLaughlin v. Bradlee*, 599 F. Supp. 839, 847 (D.D.C. 1984) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)). In determining whether this element is met, "the court will consider 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

---

[3] In addition to the claims carried over from *Ananiev III* to the present case, the plaintiff has alleged violations of the FDCPA, 15 U.S.C. § 1692e, and common law fraud (First COA), claims under 42 U.S.C. §§ 1983, 1985 & 1986 (Third COA), his FCA claims (Fourth, Fifth, Sixth, and Seventh COAs), and a Fourth Amendment claim (Eighth COA).

[4] In contrast to *Ananiev III*, the plaintiff has omitted the Sonoma County Superior Court as a defendant and added the Law Enforcement Defendants.

expectations or business understanding and usage." *RSM Prod. Corp.,* 800 F. Supp. 2d at 190–91 (quoting *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004)).

The plaintiff's claims here satisfy this requirement. Eight pages of the FAC's Issues and Statement of the Case are copied nearly verbatim from the plaintiff's complaint in *Ananiev III*. *See* FAC ¶¶ 4–16; *Ananiev III*, No. 12-1804, Compl. ("*Ananiev III* Compl.") ¶¶ 2–13. In each case, the plaintiff alleges that the defendants conspired unlawfully in foreclosing on his home without proper title. *See* FAC ¶¶ 4–16; *Ananiev III* Compl. ¶¶ 2–13. The plaintiff alleges in each case that the assignment of deed of trust was not properly executed by the original lender, and that Aurora therefore acted unlawfully in filing the unlawful detainer action and conducting the trustee's sale. The plaintiff alleges that Wells Fargo is the actual note-holder but acted in concert with Aurora to avoid the requirements of the Unrelated Consent Judgment. FAC ¶ 15; *Ananiev III* Compl. ¶ 12. Although the plaintiff's allegations against the other defendants are less clear, he appears to allege that the Law Firm Defendants acted unlawfully in assisting their client, Aurora, in the unlawful detainer action, FAC ¶ 9; *Ananiev III* Compl. ¶ 7, and that the Law Enforcement Defendants acted unlawfully in serving notice of eviction. FAC ¶ 19; *see Ananiev III* Compl. ¶ 7. Each case arises from the same connected series of events: the unlawful detainer suit, trustee's sale, foreclosure, and eviction. The plaintiff's First COA (common law fraud, violations of FDCPA and consent decree), Second COA (due process violation and IIED), Third COA (rescission and § 1983, 1985 and 1986 violations), and Eighth COA (Fourth Amendment violations) in the instant case thus arise from the same nucleus of facts as his earlier suits, since each claim arises from the connected series of events related to his mortgage,

foreclosure, and eviction.  The identity element of res judicata is therefore satisfied with regard to those claims.[5]

Furthermore, the preclusive effect of the prior lawsuits extends to the newly added defendants, namely, the Law Enforcement Defendants.  "[R]es judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972).  "Members of a conspiracy are deemed under the law to be in privity with each other." *RSM Prod. Corp.*, 800 F. Supp. 2d at 194 (citing *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17–18 (1st Cir. 2010)).  In *RSM Prod. Corp.*, the court held that the plaintiff's claims against new defendants were barred where the plaintiff alleged the new defendants acted in conspiracy with the defendants in his prior suit.  *Id.* at 193–94; *see also McLaughlin*, 599 F. Supp. at 848 (holding that defendant who was not named in plaintiff's prior suits could assert res judicata because the conspiracy alleged by plaintiff had already been dismissed against the other defendants in earlier litigation).  Although he does not specifically label his claims against the Law Enforcement Defendants as stemming from a conspiracy, the plaintiff makes factual allegations consistent with a conspiracy among the defendants in this

---

[5] Although the Court need not address the plaintiff's FCA claims—the Fourth, Fifth, Sixth, and Seventh COAs— further since the plaintiff utterly fails to state a claim under the FCA, *see* Part III.A *supra*, these claims could also be construed as arising from his mortgage, the unlawful detainer action, and subsequent foreclosure.  The plaintiff's FCA claims allege that the Bank Defendants and their agents "falsely represented that they held good title" to mortgage-backed security assets sold to the U.S. Treasury and other government entities and "received millions of dollars in U.S. government funds to provide services involving fraudulent mortgage assignments or received payments on federal government guarantee of mortgages."  FAC ¶ 136.  The plaintiff makes generalized accusations about the mortgage industry writ large, but then attempts to tie these generalizations to his own situation—at least with respect to the Fifth and Sixth COAs—by claiming these activities "resulted in the loss of income tax revenue" to the United States." *Id.* ¶ 155.  To the extent that the plaintiff's FCA claims do arise from his own mortgage, unlawful detainer action, and foreclosure, they are barred under the doctrine of claim preclusion because they arise from the same "series of connected transactions." *McLaughlin*, 599 F. Supp. at 847.  To the extent that plaintiff's FCA claims are not connected to the series of transactions involving his mortgage and foreclosure and instead rest on alleged wrongdoing in the mortgage industry in general, it is less certain that his claims arise from the same "series of connected transactions."  *See id.* at 847.  This is of no import to the dismissal of this case, however, since the non-precluded portions of the FCA claims do not state a claim upon which relief can be granted.  *See* Part III.A.

case. *See* FAC ¶ 1 (stating Wells Fargo is "directing the other Defendants behind the scenes and is masking their involvement in the matter"); ¶ 4 (stating Wells Fargo is "directing the activities of the other defendants, knowing they are taking actions in direct defiance of the consent decree"); ¶ 88 ("Defendants conspired with [Wells Fargo] and their agents and attorneys in violation of the consent decree"); ¶ 112 ("Defendants conspired with [Wells Fargo and Aurora] and their agents and attorneys in violation of [42 U.S.C. §§ 1983, 1985 and 1986]"); ¶ 163 ("Defendants conspired to commit a violation of 31 U.S.C. § 3729" *et seq.*). Since the plaintiff alleges the Law Enforcement Defendants conspired with the other defendants against whom similar claims were dismissed on the merits, and the circumstances of that alleged conspiracy are the basis of the plaintiff's claims, the defendants are in privity and have a significant relationship under *Gambocz* such that res judicata appropriately bars the instant claims against the Law Enforcement Defendants to the same extent that those claims are barred against the other defendants. 468 F.2d at 842 ("[T]he relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action and, therefore, it is barred"). Thus, all of the plaintiff's claims which were previously asserted in *Ananiev I, II,* or *III*, or that could have been asserted in those cases are barred against all defendants.

## C.  Eighth COA: Fourth Amendment Claim

The plaintiff's final cause of action alleges a violation of his Fourth Amendment rights by the Law Enforcement Defendants in seizing his property. FAC ¶¶ 164–71. The allegations do not make clear when the Law Enforcement Defendants seized his property or even whether they have done so. *Compare id.* ¶ 166 (stating Law Enforcement Defendants are "about to serve a document purportedly giving [them] authority to seize our property" and plaintiff "expects the

Defendants to serve [him] with a Writ of Possession and Eviction Notice soon"), *with id.* ¶ 168

("The document used to compel me to vacate the subject property was not signed under

oath . . .").  The plaintiff's allegations arguably give rise to two interpretations:  that the Law

Enforcement Defendants have yet to serve such a writ and seize the property or that the Law

Enforcement Defendants have already done so.  Under either construction, the plaintiff's Fourth

Amendment claim must be dismissed.

To the extent the plaintiff alleges that the Law Enforcement Defendants will, in the

future, violate his Fourth Amendment rights by serving him with a Writ of Possession and Notice

of Eviction, his claim is barred under Federal Rule of Civil Procedure 12(b)(1), since the claim

does not present an actual case or controversy.[6]  "A dispute does not fall within the subject-

matter jurisdiction of federal courts unless it qualifies as a 'case' or 'controversy' within the

meaning of article III, and it cannot so qualify unless the plaintiff has suffered 'injury in fact.'"

*Nat'l Ass'n of Recycling Indus., Inc.*, 494 F. Supp. at 160 (citing *Schlesinger*, 418 U.S. at 218–

19; *Ass'n of Data Processing Serv. Orgs., Inc.*, 397 U.S. at 151).

A "live case or controversy" must allege an injury of "sufficient immediacy and reality"

to provide a court with subject matter jurisdiction over that case.  *Cruz*, 150 F. Supp. 2d at 119

(citing *Lyons*, 461 U.S. at 104).  Thus, if the plaintiff alleges here that he is merely fearful of a

future Fourth Amendment injury stemming from an expected future eviction—as suggested by

his language that the Law Enforcement Defendants are "about to serve" a writ and that he

"expects the Defendants to serve [him]," FAC ¶ 166—his claim presents neither a sufficiently

real and immediate injury nor a live controversy and must therefore be dismissed under Rule

12(b)(1) for lack of subject matter jurisdiction.

---

[6] As previously noted, the Court must consider a lack of subject matter jurisdiction *sua sponte*.

If, on the other hand, plaintiff means to allege that the Law Enforcement Defendants have already served him with the writ and notice, depending on the time of eviction, his claim is either barred under the doctrine of claim preclusion or the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

If the eviction took place prior to the plaintiff's previous litigation, the plaintiff's Fourth Amendment claim is precluded because the plaintiff could have brought the claim in his prior actions. *See* Part III.B *supra*. As noted previously, claim preclusion bars "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *McLaughlin*, 599 F. Supp. at 847 (quoting *Restatement (Second) of Judgments* §§ 24 (1982)). The eviction is part of the series of connected transactions—the mortgage, unlawful detainer action, foreclosure, and eviction— on which plaintiff based his prior claims. Under this interpretation of the plaintiff's Fourth Amendment claim, the claim is barred under claim preclusion.

If, however, service of the Writ of Possession and Notice of Eviction occurred after *Ananiev I, II,* and *III*, the Court lacks subject matter jurisdiction over the plaintiff's Fourth Amendment claim under the *Rooker-Feldman* doctrine and it must be dismissed under Federal Rule of Civil Procedure 12(b)(1). The *Rooker-Feldman* doctrine states that a federal district court lacks authority to review a final judicial determination of a state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 285 (2005). "Among federal courts . . . Congress has empowered only [the Supreme] Court to exercise appellate authority 'to reverse or modify' a state-court judgment." *Id.* at 284. This jurisdictional bar applies "even if the complaint alleges that the state court's action was unconstitutional." *Busch v. Torres*, 905 F. Supp. 766, 771 (C.D.

Cal. 1995) (citing *Feldman*, 460 U.S. at 486). "A complaint challenges a state court decision if the constitutional claims are 'inextricably intertwined' with the state court's decision in a judicial proceeding." *Id.* (citing *Feldman*, 460 U.S. at 483 n.16). "[T]he federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987)). Further, "if a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the *Rooker-Feldman* doctrine is in play." *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995).

In the instant case, the plaintiff is essentially challenging the Superior Court's judgment in the Unlawful Detainer Action by challenging its subsequent enforcement. The plaintiff's Fourth Amendment claim hinges on the validity of the Sonoma County Superior Court's judgment in the Unlawful Detainer Action. *See* FAC ¶¶ 16, 35, 44. The plaintiff is thus asking this Court to review that state court judgment, which is prohibited under the *Rooker-Feldman* doctrine. *See Homola*, 59 F.3d at 649–50 (dismissing plaintiff's challenge of constitutionality of state court-ordered inspection of plaintiff's property and ensuing contempt proceeding for refusing to allow inspection); *Magritz v. Ozaukee Cnty.*, 894 F. Supp. 2d 34, 38–40 (D.D.C. 2012) (dismissing plaintiff's unlawful taking claim stemming from judicial foreclosure under *Rooker-Feldman*); *Liebman v. Deutsche Bank Nat'l Trust Co.*, No. 13-1392, 2014 WL 526712, at *3–4 (D.D.C. Feb. 11, 2014) (dismissing actions against mortgagee, loan servicer, and state court judge stemming from state court's foreclosure judgment under *Rooker-Feldman*); *Busch*, 905 F. Supp. at 772 (dismissing plaintiff's claims stemming from state court unlawful detainer action and its execution). Under this interpretation of the plaintiff's factual allegations—that the writ and notice were served on the plaintiff after the filing of this action and are therefore not

already barred by res judicata— this Court lacks subject matter jurisdiction over the claim since it may not review the Superior Court's unlawful detainer judgment and the validity of that judgment is inextricably tied to the plaintiff's Fourth Amendment claim. Consequently, since the plaintiff's Eighth COA fails under either possible interpretation of the plaintiff's contradictory factual allegations, the plaintiff's Fourth Amendment claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the plaintiff's complaint is dismissed in its entirety since it is "'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint," *Rollins*, 703 F.3d at 127, through a failure to state a claim upon which relief can be granted, a lack of subject matter jurisdiction, or by res judicata. It is dismissed with prejudice since no additional facts could cure the substantial deficiencies in the complaint and the plaintiff has not sought leave to amend. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (holding dismissals with prejudice are "warranted only when a trial court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency" (internal quotation marks and citations omitted)); *see also United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1211 (D.C. Cir. 2011) (finding no abuse of discretion in dismissing suit with prejudice when the plaintiff "never asked for leave to amend his complaint in the district court").

An appropriate Order accompanies this Memorandum Opinion.

**DATED:** April 11, 2014

_____
BERYL A. HOWELL
United States District Judge